## PROXIMATE CAUSE AND LEGAL CAUSE.

Common Pleas Court of Hamilton County.

FRANK X. KING v. THE PITTSBURGH, CINCINNATI, CHICAGO &
ST. LOUIS RAILWAY COMPANY, AND THE CINCINNATI
TRACTION COMPANY.

Decided, 1911.

*Negligence—Jury Should Fix Liability—Where a Chain of Negligent Acts by Different Parties Result in Injury to an Innocent Person.*

The watchman at a steam railway crossing failed to lower the gates upon the approach of a backing train, without a headlight, and only a brakeman's lantern to show its approach. At the same time a street car attempted to pass over the crossing, without the conductor first going forward to see whether the crossing could be safely made. When directly upon the steam railway tracks the street car stopped, and a passenger, seeing the danger impending, sprang from the rear platform and was injured. *Held:*

In an action for damages brought by the injured passenger against both companies, demurrer by the steam railway company will not lie on the ground that the petition fails to allege that the gates were placed not further than fifty feet from the crossing; or on the ground that the proximate cause of the injury was the stopping of the street car on the crossing; but the court will submit to the jury the question whether any or all of the negligent acts complained of contributed to the injury of the plaintiff, and if the jury find only a particular act or acts in the chain of causation produced the injury, that they specify such act or acts.

*Wm. C. McLean,* for plaintiff.
*Maxwell & Ramsey,* contra.

GORMAN, J.

This is a petition to recover damages against the Cincinnati Traction Company and the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company, in which the plaintiff alleges that he was injured while riding upon a street car as it was crossing the railroad company's tracks where the same cuts Eastern avenue at what is known as the Rookwood crossing. The petition

avers that the traction company was negligent in this, that its conductor failed to go forward to the middle of the railroad tracks to look out for approaching trains before signalling the motorman to come onto the crossing with his car.

The railroad company is alleged to have been negligent in opening the gates at the Rookwood crossing when the same should have been kept closed because of an approaching train. The railroad company is further averred to have been negligent in backing down a train from the east, upon the west bound track without having a proper headlight thereon and having merely a brakeman's lantern upon the rear of the train.

The defendant traction company is further averred to have been negligent in permitting the car upon which plaintiff was a passenger, to stop upon the railroad tracks, and while so stopping, the railroad company's train descended upon the car from the east as heretofore stated; that as the result of these acts on the part of the defendants, plaintiff upon seeing the approaching train and fearing for his life and safety jumped from the rear of the street car and was injured.

A demurrer is filed to the petition by the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company on the ground that the facts stated in the petition do not constitute a cause of action against the defendant railroad company.

In the oral arguments to the court and in the memorandum brief filed on behalf of the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company, its counsel contend that the petition is defective in that it fails to aver that the gates at the Rookwood crossing were placed not farther than fifty feet from the railroad tracks. Counsel for this defendant further argues that these gates on the east side of the crossing were located more than fifty feet away from the railroad tracks.

The court can not consider this matter, as it is *de hors* the record. There is nothing in the petition which discloses that the gates were more than fifty feet from the railroad tracks. Nor is it necessary, in the opinion of the court, that the petition should aver that the gates were within fifty feet of the railroad tracks. It is true that the statute requires a street car

about to cross a steam railroad track, to be brought to a stop not less than ten feet nor more than fifty feet from the crossing, and that an employe. of the street car company shall go forward to look out for approaching trains. But this provision of the statute does not make it obligatory upon the railroad company to maintain its gates within the fifty foot limit. Nor does it follow that the gates might not be lowered upon the approach of a street car, even though they were located more than fifty feet away from the railroad tracks and notwithstanding the fact that the employe of the street car company should go forward to look out for approaching trains.

The court is of the opinion that this question was involved in the case of *Street Railway Company* v. *Murray*, 53 O. S., 570. This was a case in which Murray was a passenger upon a street car and was killed at the Harrison avenue crossing by a collision of the Baltimore & Ohio Southwestern Railway Company's train with the street car, and in an action brought by his administratrix against both the street railway company and the railroad company, a verdict was returned against both; and all the courts, including the Supreme Court of the state, held that both were liable. The negligence averred in that case against the railroad company was the opening of the gates and inviting the street car to come upon the tracks at a time when there was a train of the Baltimore & Ohio Southwestern Railway Company approaching the crossing so near thereto that it was negligence on the part of the flagman to open the gates and invite the street car to cross. The negligence alleged in that case against the street railway company was the failure of the conductor of the car to go forward to the middle of the track and make an observation for approaching trains. While the question is not discussed in that case it would appear that the courts must have held, of necessity, that both the defendant companies were negligent and that the negligence of both contributed to produce the death of Murray.

It is further urged in the case at bar that the railroad company is not liable, because the injuries alleged to have been sustained by the plaintiff were not produced or brought about

by any negligence of the railroad company; that the petition does not affirmatively show that any act of negligence of the railroad company was the proximate cause of the plaintiff's injuries, but on the contrary, the petition affirmatively shows that the proximate cause of the plaintiff's alleged injury was the stopping of the street car upon the railroad track.

Proximate cause has given the courts a great deal of trouble. There is a very interesting and instructive article by Professor Jeremiah Smith, of Cambridge, in the December, 1911, number of the *Harvard Law Review,* Vol. 25, No. 2, in which he very learnedly and logically considers the question of "proximate cause" and "legal cause" in actions of tort. Among other things, he says that:

"John Stuart Mill, on his work on Logic, says, in substance, that the cause of an event is the sum of all the antecedents, and that we have no right to single out one antecedent and call that the cause."

Professor Smith then proceeds to say that the logician's view of cause is not the juridical view, but the practical question for a jurist is whether the tortious conduct of any human being has had such an operation in subjecting a plaintiff to damage as to make it just that the tort feasor should be held liable to compensate the plaintiff. He says that the maxim laid down by Lord Bacon and his comments thereon, can not be considered as legally correct if taken in the literal sense.

This maxim, *"In jure non remota causa, sed proxima, spectatur,"* Professor Smith says, taken literally, would be understood as implying that the antecedent which is nearest in space or time is invariably to be regarded as the legal cause. He further says:

"But it is a mistake to suppose that contiguity in space or nearness in time are legal tests of the existence of causal relation."

He quotes from Bower's Code of Actionable Defamation, p. 315, the following:

" 'Remoteness' again is an utterly misleading and illogical term. It comes from the hazy and incorrect maxim, *'in jure proxima causa, non remota, spectatur,'* as elaborated by Sir Francis Bacon (Maxims of Law, Reg. 1) in his continually quoted but ridiculously unscientific comment, 'it were infinite to consider the impulsions of causes one upon another,' etc. It is just this which the law has to consider. It is not a question of remoteness and proximity, but of causation or non-causation. * * * Proximate cause as a term to indicate the relation of legal cause and effect is a misnomer."

Professor Smith further quotes from the case of *Marble* v. *Worcester,* 4 Gray (Mass.), 395, the following language of Judge Thomas in the dissenting opinion:

"The reasonable inquiry, I submit, is not which is nearest in place or time, but whether one is not the efficient, producing cause, and the others but incidental."

He further calls attention to what is sometimes called "The But for Rule" or "But for which Rule," and sometimes "The *Causa sine qua non* Rule":

"This test or rule affirms that the defendant's tort is the legal cause of the plaintiff's damage; but for the commission of defendant's tort, the damage would not have happened."

Under this topic, Professor Smith says:

"A defendant's tort must be distinctly traceable as one of the substantial efficient antecedents; as having had a substantial share in subjecting plaintiff to the damage."

He further calls attention to another alleged test of the existence of causal relation which he says is based upon the distinction between a cause and a condition, and says:

"The distinction between cause and condition would be valuable, if there were any definite standard for determining what is a cause and what is a condition. The only standard by which this can be determined is the same as that which determines a proximate from a remote cause; * * * Accordingly, 'condition' or 'occasion' while affording a convenient verbal distinction, is, in use, likely to mislead thinkers into a conviction that

they have something which they have not.'' Citing 1 Jaggard on Torts, 64.

He calls attention also to what Dr. Wharton, in his work on Negligence, 1st Ed., denominates as the ''Last (or Nearest) Wrongdoer Rule,'' which is in substance as follows:

''The legal cause is the last (or nearest) culpable human actor to be found in the chain of antecedents: *i. e.*, the one acting last before, or nearest to the happening of the damage to the plaintiff.''

Professor Smith says that this is a working rule to apply in a hurry. In a great majority of cases it gives the correct result. But it will not always do. He further says:

''Moreover, the last wrongdoer, if himself liable, is not necessarily the only party liable. An earlier wrongdoer may sometimes be suable at the election of plaintiff.''

Professor Smith gives this illustration:

''Suppose that there are two tortious human actors, A and B, in the chain of antecedents, not acting in concert; that A's tort began earlier; that B's tort, which began later, immediately preceded the happening of the damage to the innocent plaintiff and was the only force in active motion at the time of the damage. Is B liable? Can the innocent plaintiff, in any conceivable case, have a right to sue A?''

It seems to me that giving the petition the construction most favorable to the railroad company, the answer to the supposed case just put by Professor Smith, will determine the question of the proximate cause of plaintiff's injury in the case at bar. Now, how does Professor Smith answer this case? He says:

''If B's tort has a substantial share in bringing about the damage, B, of course, can not be exonerated on the ground that his tort was, in one sense, 'caused' by the earlier tort of A.''

He further says:

''But because B is liable, it does not necessarily follow that A is exonerated. By the decided weight of authority, A would be

liable if he foresaw, or ought to have foreseen, the commission of B's tort, and the resultant damage, as a not unlikely consequence of his earlier tort.''

Professor Smith cites in this connection in support of his supposed case and his answer thereto, Clerk & Lindsell on Torts, 5th Ed., 519, 522, a most excellent and exhaustive work on torts. In Clerk & Lindsell at the place above cited, it is said:

''In many cases it is not correct to speak of A and B as 'successive' wrongdoers, nor to call A 'the earlier,' or B 'the later' wrongdoer.''

He also cites this language from Pollock on Torts, 8th Ed., 464:

''What has been said concerns the question of causation when arising in litigation between an innocent plaintiff and one of two independent wrongdoers. But it should be carefully noted that, in a controversy between two negligent wrongdoers, courts are inclined to adopt an exceptional rule of legal cause, differing from the ordinary rule of legal cause which is applied in a suit by an innocent third party against either of said wrongdoers. The term 'proximate cause' or 'legal cause' is not used in precisely the same sense in fixing defendant's liability to an entirely innocent plaintiff and in fixing a negligent plaintiff's disability to sue a negligent defendant.''

Now in the case at bar, if we apply these principles laid down by Professor Smith, it would appear that there was negligence, first on the part of the defendant railroad company in opening its gates and thereby inviting the street car upon which the plaintiff was a passenger to come upon the railroad track at a time when it was dangerous to do so because of the approaching train from the east, which approaching train the watchman at the crossing did know of, or, in the exercise of ordinary care should have known of. The street car company's agents and employes were negligent in not going forward far enough upon the railroad tracks to observe the approaching train. The street car company's employes were again negligent in permitting the car to stop upon the railroad tracks. And the railroad company was negligent in backing down its train without having a proper headlight thereon.

Now, it seems to the court that all of these acts of negligence were concurring, and that in the chain of causation it can not be said by the court that any one or two of these negligent acts was the legal cause which resulted in the plaintiff's injury.

It appears to the court that the proper rule to apply is to submit to the jury the question of whether or not any or all of the alleged negligent acts of the defendants contributed to bring about the plaintiff's injury, and if only those negligent acts alleged against the street car company produced the injury, then the street car company should be held liable by the jury; or, if the alleged negligent acts of the street car company did not bring about the plaintiff's injury, but only the alleged negligent acts of the railroad company, then the railroad company should be held liable and not the street car company. Or, if the jury should find that it was the concurring negligent acts of both of the defendants which contributed to plaintiff's injury, then both should be held liable by the jury. Or, if the alleged negligent acts of neither failed to bring about or contribute to the plaintiff's injury, then neither of the defendants should be held liable by the jury.

I am not prepared to say that the proximate cause of this injury was the stopping of the street car upon the crossing. It is true that it may be claimed that the presence of the street car upon the track at the time and place of the plaintiff's injury was a condition and not a cause of the injury; but if this be true, nevertheless, the plaintiff was an innocent sufferer, if the averments of his petition be true, because of the alleged negligent acts of both of the defendants or either of them; nor was he responsible for the condition that was produced by the street car being upon the railroad tracks at the time and place.

It appears to the court that the petition is proof against the demurrer of the defendant railroad company both upon the question of the location of the gate and the proximate cause. This conclusion appears to be sustained by the decision of our circuit court in the case of *Kopp* v. *B. & O. S. W. Ry. Co.*, 6 C.C. (N.S.), 103, affirmed by the Supreme Court without report, 70 O. S., 436. Judge Giffin, in deciding the case, employes this language in commenting upon the case of *Street Railway Co.* v. *Murray, supra*:

"It may be said of that case that notwithstanding the gates were up, and notwithstanding the employe of the street railway company failed to go ahead to see if the way was clear, still the collision would probably not have occurred had the employes of the railroad company operating the train given some signal of the approaching train, and that the failure to do so was the direct cause of the accident, and therefore the street railway company was not liable. *But the court evidently considered the three causes, although distinct and independent, as concurring to cause the collision.*"

For the reasons stated the demurrer of the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company to the plaintiff's petition will be overruled.